FILED
2019 Jan-24 PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

**LEONE SILVA, ERNESTO
ANACLETO, ANGEL MARTINEZ,
MARTIN RAMON, EDUAR
SAUCEDA-NUÑEZ, and JOSE
HERNANDEZ,**
     **PLAINTIFFS,**

**VS.**                         **CV NO.:**

**ROBERT DALE, GRAYCLIFF
ENTERPRISES, INC., and RD & S
COMMUNICATIONS
RESOURCES LLC,**
     **DEFENDANTS.**

## COMPLAINT

## I. JURISDICTION

    1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(3) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

## II. PARTIES

    2.    Plaintiff, Leone Silva, ("Silva") is a resident of Fort Myers, Lee County, Florida, and performed work for the Defendants in the counties comprising the

Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Jasper Northern District of Alabama Jasper Division.

3.      Plaintiff, Martin Ramon, ("Ramon") is a resident of New Orleans, Orleans Parish, Louisiana and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama, Jasper Division.

4.      Plaintiff, Ernesto Anacleto ("Anacleto") is a resident of New Orleans, Orleans Parish, Louisiana, and performed work for the Defendants in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama Jasper Division.

5.      Plaintiff, Angel Martinez, ("Martinez") is a resident of New Orleans, Orleans Parish, Louisiana, and performed work for the Defendants in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant

to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama Jasper Division.

6.      Plaintiff, Eduar Sauceda-Nuñez ("Sauceda") is a resident of Tegucigalpa, Honduras, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama Jasper Division.

7.      Plaintiff, Jose Hernandez ("Hernandez") is a resident of Sunbury, Northumberland County, Pennsylvania and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama Jasper Division.

8.      Defendant, Robert Dale, ("Dale") is a resident of Tallasee, Elmore County, Alabama. Dale is the owner of RD & S Communication Resources, LLC. Defendant hired the plaintiffs to perform work in the counties composing the Northern District of Alabama during the events of this case.

9.      Defendant RD & S Communications Resources LLC, ("RD & S") is a company registered and doing business in the State of Alabama and has sufficient

minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s). Therefore, this Court has jurisdiction over Defendant.

10.    Defendant Graycliff Enterprises, Inc., ("Graycliff") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s). Therefore, this Court has jurisdiction over Defendant.

## III.  STATEMENT OF FACTS

11.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

12.    Valley Estates is a residential subdivision in Jasper, Alabama.

13.    When Valley Estates was constructed, the contractor failed to bury cable television lines in the subdivision before the homes were built.

14.    Once the homes were constructed and the owners moved in, they found that they could not connect to the local cable service provided by Charter, because their homes lacked a connection to the Cable company.

15.    Valley    Estates,    Subdivision,    Inc.,    contracted    with    Charter Communications to install the cable necessary to get cable service for the homes in the subdivision.

16.    On or about March 17, 2017, Valley Estates Inc., tendered a $14,000.00 payment to Charter for the cost of burying cable for the subdivision.

17.    Charter cashed that payment and undertook to install the cable necessary to comply with its contract with Valley Estates, Inc.

18.    Charter contracted with Graycliff to bury the cable at the Valley Estates subdivision.

19.    In turn, Graycliff enlisted RD & S to assist in the project.

20.    Graycliff employs Richard Maben as a project manager.

21.    Upon information and belief Robert Dale is the owner of RD & S.

22.    Robert Dale met Leone Silva while Silva was working on jobs burying telecommunications cable in Tennessee.

23.    After working on some jobs for Dale in Tennessee, Dale asked Silva if he would find several other workers to come to Jasper, Alabama to work on the Valley Estates project.

24.    Silva did not have a cable burying company.

25.    At Dale's request, Silva asked Martin Ramon to come with him to Alabama to work for RD & S on the Valley Estates project.

26.     At Dale's request, Silva asked Ernesto Anacleto to come with him to Alabama to work for RD & S on the Valley Estates project.

27.     At Dale's request, Silva asked Angel Martinez to come with him to Alabama to work for RD & S on the Valley Estates project.

28.     At Dale's request, Silva asked Eduar Sauceda to come with him to Alabama to work for RD & S on the Valley Estates project.

29.     At Dale's request, Silva asked Jose Hernandez to come with him to Alabama to work for RD & S on the Valley Estates project.

30.     Ramon, Anacleto, Martinez, Sauceda and Hernandez agreed to accompany Silva on the RD & S job.

31.     Silva does not offer, bid for, market, or sell services as a telecommunications construction contractor to the general public or other businesses.

32.     Instead, Silva works for contractors who are engaged in the business of burying cable.

33.     Ramon does not offer, bid for, market, or sell services as a telecommunications construction contractor to the general public or other businesses.

34.     Instead, Ramon works for contractors who are engaged in the business of burying cable.

35.     Anacleto does not offer, bid for, market, or sell services as a telecommunications construction contractor to the general public or other businesses.

36.     Instead, Anacleto works for contractors who are engaged in the business of burying cable.

37.     Martinez does not offer, bid for, market, or sell services as a telecommunications construction contractor to the general public or other businesses.

38.     Instead, Martinez works for contractors who are engaged in the business of burying cable.

39.     Hernandez does not offer, bid for, market, or sell services as a telecommunications construction contractor to the general public or other businesses.

40.     Instead, Hernandez works for contractors who are engaged in the business of burying cable.

41.     Dale agreed to pay plaintiffs a piece rate of $3.75 per linear foot of cable that was buried in the subdivision.

42.     The Plaintiffs agreed to divide the money RD & S paid among them with Silva getting a larger portion than the others for organizing the trip.

43.    The Plaintiff's traveled to Alabama from Tennessee in March of 2017 to work for RD & S on the Valley Estates project.

44.    When they arrived plaintiffs met Dale, and another man, Richard Maben at the Green Lantern Restaurant and Lounge in McCalla.

45.    Maben was the owner of the Green Lantern Restaurant.

46.    Dale introduced the man to Silva as his boss.

47.    Robert Dale rented the plaintiffs a hotel room to stay in while they completed the work.

48.    Before Plaintiffs began working on the job, Charter placed hang tags on Valley Estates residents' door indicating that it would soon begin to bury cable.

49.    Plaintiffs began burying the cable in the subdivision in early April 2017.

50.    In order to begin the job Plaintiffs needed certain tools and materials.

51.    For example, Plaintiff's needed an air compressor to shoot rockets underground to make way for the cable.

52.    Plaintiff's also needed a rocket necessary to prepare the ground for the cable.

53.    Robert Dale, the owner of RD & S, rented the compressor necessary to shoot the rockets.

54.    Dale also rented a rocket to be used to bury the cable.

55. Plaintiffs also needed the cable that would be buried.

56. When the time came to place the cable in the holes that Plaintiffs dug, Robert Dale instructed Leone Silva to go to the Green Lantern Restaurant and Lounge in McCalla, Alabama to pick up the materials.

57. The plaintiffs went to the Green Lantern and picked up materials necessary to complete the job including the cable, wheelbarrows, and various other items necessary to complete the job.

58. When Silva arrived at the Green Lantern, he found Richard Maben he had met at the lounge sitting in a pick-up truck.

59. There were three trailers stored at the Green Lantern that contained the supplies necessary to perform the work including the cable Plaintiffs buried in the subdivision.

60. Maben directed plaintiffs to the part of the property where the materials and equipment were stored.

61. For no less than 14 hours each day for seven weeks, Plaintiffs arrived at the worksite at Valley Estates, dug holes, shot rockets and buried over 7,000 linear feet of cable for which they were not paid.

62. As they were working on the project, a Richard Maben, a Graycliff employee would come to the job site and monitor progress at least two times a week.

63. Another employee of either Graycliff or RD & S named Bill (LNU)

64.    While Bill was there, he would show the plaintiff's the plan and tell them what to do.

65.    Bill discussed the progress of the project with Maben and other RD & S employees and directed the plaintiff's work to comply with Graycliff's specifications.

66.    For the first few weeks, RD & S paid Plaintiffs cash for their work.

67.    However, eventually, Defendants and RD & S stopped paying.

68.    Plaintiffs continued to work for Defendants even though they had not been paid.

69.    On or about June 2, 2017, after the third week with no pay, Silva contacted Robert Dale and asked why he and the other workers had not been paid.

70.    Robert Dale refused to answer the plaintiffs' call.

71.    Silva went to the Green Lantern to meet with representative from Graycliff, Maben.

72.    Maben told Silva that he would not pay the workers that had worked on the project.

73.    Maben then told the workers to leave.

74.    As they were leaving, the workers experienced car trouble.

75.    Then Maben told Plaintiffs they had 30 minutes to get their stuff and leave the Green Lantern's property or he would call the police.

76.    A couple of minutes later, Robert Dale called Silva.

77.    During the conversation, Dale threatened to have the Plaintiffs arrested for stealing the compressor that they were using to bury the cable.

78.    Dale then sent a text message threatening to kill the plaintiffs if they did not leave Alabama.

79.    Next, Dale called the police and had them confiscate the compressor that Dale had rented.

80.    After Plaintiffs' calls to Dale, the police arrived at the hotel where Plaintiffs were staying.

81.    The police told the plaintiffs that they had been accused of stealing the compressor that Robert Dale had rented for them to use.

82.    The police took the compressor.

83.    When Plaintiff contacted Dale again to collect the wages that were owed, Dale threatened to call Immigration and Customs Enforcement if the defendants did not leave Alabama immediately.

84.    Dale then canceled the reservation at the hotel room that he had rented for the plaintiffs.

85.    Dale never paid Plaintiffs for the work they performed.

86.    Graycliff Enterprises never paid Plaintiffs for the work they performed.

87.    RD & S never paid plaintiffs for the work they performed.

## IV. COUNT ONE – FLSA – OVERTIME VIOLATIONS - AGAINST ALL DEFENDANTS

88.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

89.     At all times relevant to this action, Graycliff was an employer of Plaintiffs as defined by 29 U.S.C. § 203(d).

90.     At all times relevant to this action, RD & S was an employer of Plaintiffs as defined by 29 U.S.C. § 203(d).

91.     At all times relevant to this action, Robert Dale was an employer of Plaintiffs as defined by 29 U.S.C. § 203(d).

92.     During the three years preceding the filing of this Complaint, Plaintiffs, were employees of Graycliff as defined by 29 U.S.C. § 203(e)(1).

93.     During the three years preceding the filing of this Complaint, Plaintiffs, were employees of RD & S as defined by 29 U.S.C. § 203(e)(1).

94.     During the three years preceding the filing of this Complaint, Plaintiffs, were employees of Robert Dale as defined by 29 U.S.C. § 203(e)(1).

95.     Plaintiffs were engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant.

96.     Plaintiffs' interstate commercial activity included, but was not limited to, using products that originated across state lines, and traveling across state lines to perform the work assigned.

97.     During the three years preceding the filing of this Complaint, Plaintiffs worked in excess of forty hours for a work week on at least one or more occasion.

98.     Defendant failed to pay Plaintiffs for all hours worked in excess of forty in a work week.

99.     As the result of Defendant's willful and intentional violation of the FLSA, Plaintiffs have been damaged, suffering loss of overtime pay.

## V.  COUNT TWO – FLSA – UNPAID MINIMUM WAGE – AGAINST ALL DEFENDANTS

100.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

101.    During the three years preceding the filing of this complaint, Defendants failed to pay Plaintiffs minimum wage in one or more weeks in which they worked but were not paid.

102.    Because of Defendants' willful and intentional violation of the FLSA, Plaintiffs has been damaged, suffering loss of the federally mandated minimum wage for all the hours she worked.

103.    As a result of Defendant's pay practices, Plaintiffs seek recovery of wages such that they be paid the minimum wage for all hours worked.

## VI.   COUNT THREE – FLSA– RETALIATION
## TERMINATION - AGAINST ALL DEFENDANTS

104.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

105.   Defendant intentionally violated the FLSA by failing to pay Plaintiff for overtime and minimum wage hours worked without any basis in fact.

106.   Plaintiffs complained to Graycliff about not being paid their wages.

107.   Plaintiffs complained to RD & S about not being paid their wages.

108.   Plaintiffs complained to Robert Dale about not being paid their wages.

109.   Within days of those complaints, Defendants terminated Plaintiffs' employment.

110.   Defendants retaliated against Plaintiffs by terminating her employment because they asked why they had not been paid for all hours worked.

111.   Defendants retaliated against Plaintiffs by calling the police and reporting a compressor stolen, when it had not been after they complained that they had not been paid for all hours worked.

112.   Robert Dale retaliated against Plaintiffs by cancelling their hotel reservation after they complained that they had not been paid.

113.   Robert Dale retaliated against Plaintiff's by threatening them with physical harm and Immigration and Customs Enforcement after they complained that they had not been paid.

114.  Defendants' actions in terminating Plaintiff violated the FLSA.

115.  Defendants' actions in calling the police violated the FLSA.

116.  Defendants actions in threatening Plaintiffs violated the FLSA.

117.  Because of Defendants willful and intentional violation of the FLSA,

Plaintiff has suffered loss of pay, benefits and other compensatory damages.

## VII. COUNT FOUR – CIVIL HUMAN TRAFFICKING ALA. CODE §13A-6-157 – AGAINST ROBERT DALE

118.  Defendant, Robert Dale subjected defendants to labor servitude by coercion in that he withheld Plaintiffs personal property.

119.  Defendant Robert Dale subjected Plaintiffs to labor servitude by deception in that he induced Plaintiffs to work under the guise of payment for services and then refused to pay for that work citing the lack of a contract.

120.  Defendant, Robert Dale subjected Plaintiffs to labor servitude by deception in that he induced Plaintiffs to work under the guise of payment for services and then threatened to call Immigration and Customs Enforcement when plaintiffs asked to be paid for the work they were performing.

## VIII. COUNT SIX – WORK AND LABOR DONE – AGAINST ALL DEFENDANTS

121.  Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

122.  Between March 1, 2017, and July 1, 2017, Plaintiffs did work and labor for the Defendants at the Defendants' request.

123.  Defendants have failed or refused to pay for said work and labor.

124.  Plaintiffs expected payment from Defendants for the labor they performed.

125.  Defendants had knowledge of Plaintiffs' work and labor and have refused to compensate Plaintiffs for such work and labor.

126.  WHEREFORE, Plaintiffs demand judgment against Defendants in a sum to be determined by the trier of fact, plus interest and costs.

## IX.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.  The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B.  This Court award Plaintiffs the amount of their back overtime pay, plus an additional equal amount as liquidated damages; treble damages, nominal damages; and special damages;

C.  That Plaintiff be granted judgment against Defendants jointly and severally for all reasonable attorneys' fees, costs, disbursements and interest; and

D.  For such other and further relief as this Court deems equitable, proper and just.

_____
                              OF COUNSEL

**DEFENDANTS ADDRESSES:**

Graycliff Enterprises, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104

RD & S Communications Resources
LLC
C/O Robert Dale
42 Natchez Trace LP
Tallassee, AL 36078

Robert Dale
42 Natchez Trace LP
Tallassee, AL 36078

F.    Attorneys' fees and costs;

G.    Any different or additional relief as may be determined by the Court to

which Plaintiffs are entitled.

_____
Kira Fonteneau

_____
Felicia Long

**OF COUNSEL:**

The Fonteneau Firm LLC – a member
of the 5 Points Law Group LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
T: (205) 252-1550 F: (205) 502-4476

_____
Freddy Rubio

Rubio Law Firm, P.C.
438 Carr Ave
Birmingham, AL 35209

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANTS ADDRESSES:**

Graycliff Enterprises, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104

RD & S Communications Resources
LLC
C/O Robert Dale
42 Natchez Trace LP
Tallassee, AL 36078

Robert Dale
42 Natchez Trace LP
Tallassee, AL 36078